FILED
CLERK

4/18/2013 11:47 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
B&A DEMOLITION AND REMOVAL, INC.,

                    Plaintiff,

       -against-

MARKEL INSURANCE COMPANY,

                    Defendant.
---------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
11-cv-0572 (ADS)(ARL)

**APPEARANCES:**

**Law Office of Brian J. Davis P.C.**
*Attorneys for the Plaintiff*
400 Garden City Plaza
Suite 450
Garden City, NY 11530
      By:    Brian J. Davis, Esq., of Counsel

**Traub Lieberman Straus & Shrewsberry LLP**
*Attorneys for the Defendant*
7 Skyline Drive
Hawthorne, NY 10532
      By:    Meryl R. Lieberman, Esq.
              Brian Margolies, Esq., of Counsel

**SPATT, District Judge.**

      The Plaintiff in this case, B&A Demolition and Removal, Inc. ("B&A") seeks a

declaratory judgment against the Defendant Markel Insurance Company, LLC ("Markel"),

affirming that Markel has an obligation to indemnify B&A in a lawsuit presently pending in New

York State Supreme Court.  Presently before the Court is the Defendant's motion for summary

judgment.  For the reasons set forth below, the motion is granted.

## I. BACKGROUND

This derivative action relates to a case commenced on April 13, 2009 in New York

Supreme Court, Nassau County, by Parabit Realty LLC and Parabit Systems Inc. (collectively,

"Parabit") against the Town of Hempstead, B&A, and several other defendants (the "Parabit

Lawsuit").  Parabit owns a building at 35 Debevoise Avenue in Roosevelt, New York, and

alleges in the Parabit Lawsuit that B&A and the Town of Hempstead are responsible for having

damaged that building during construction of an adjacent structure.

When the Parabit Lawsuit was filed, B&A held insurance with the present Defendant

Markel that covered the type of claim that Parabit had asserted against B&A.  However, it was

not until November 17, 2009, approximately seven months after Parabit commenced that lawsuit,

that B&A notified Markel of the pending claims.  Under the parties' insurance contract (the

"Policy"), B&A's notice to Markel of the Parabit Lawsuit was not timely—although B&A

alleges that this delay did not prejudice Markel.  On December 2, 2009, Markel disclaimed

liability to B&A under their insurance contract, based on this delay in providing notice.  On

December 10, 2010, just over a year later, B&A commenced the present suit in New York

Supreme Court, Nassau County, seeking to compel Markel to honor its coverage.  The case was

then removed to this Court.

B&A bases its lawsuit on a relatively new provision of the New York Insurance Law,

N.Y. Ins. L. § 3420(a), which took effect on January 17, 2009.  Prior to that date, an insurer was

permitted to issue contracts that allowed it to deny coverage to an insured based on an untimely

notice of claim—even when the delay did not prejudice the insurer.  However, under the new

rule, insurance contracts must provide that an insurer may avoid coverage based on untimely

notice *only* if the insurer is prejudiced by the delay.  B&A contends that the new rule governs the

2

parties' insurance contract, and that to deny coverage, Markel must show that it was prejudiced by B&A's late notice.  Markel maintains that the old rule controls, and that the untimeliness of B&A's notice is reason enough to disclaim liability.  B&A recognizes that if the old rule governs, then coverage is appropriately denied.

The determination of whether this Policy is governed by the new rule or the old rule depends entirely on when the policy was "issued or delivered".  This is because the relatively new provision of the New York Insurance Law does not apply retroactively and applies only to insurance policies that were issued or delivered on or after January 17, 2009.  Therefore, the Court will now set forth the relevant facts as to the initiation of the parties' relationship and the timeline regarding the issuance of the Policy.

"It is common for an insured and an insurer to negotiate and enter into a contract of insurance through intermediaries."  MacLaren Europe Ltd. v. ACE American Ins. Co., --- F. Supp. 2d ----, 2012 WL 5426686, at *1 (S.D.N.Y. Nov. 5, 2012).  Two brokers were involved in the underwriting and negotiation process for this Policy.   The Halland Companies ("Halland") was the retail broker, while Gremesco Corporation ("Gremesco") was the wholesale broker. Generally speaking, Markel does not communicate directly with the prospective insured or with the retail broker when a policy is applied for.  Rather, Markel interacts solely with a wholesale broker such as Gremesco.  According to Markel, it has a business relationship with Gremesco but Gremesco is not its agent.  In this regard, Markel emphasizes that it does not provide Gremesco with the authority to bind coverage or calculate premiums.  Instead, Markel contends that a wholesale broker such as Gremesco is merely an "intermediary[y] that help[s] to facilitate negotiations between [Markel] and the prospective insured."  (Deft's Motion at 3.)

3

Presented to the Court is the deposition testimony of Lisa Spezzano, a longtime employee of Gremesco.  (See Margolies Aff., Ex. 13.)  Spezzano was the Gremesco representative who was involved in the delivery of the Policy after it was issued by Markel.  She testified that a retailer such as Halland is a company that gets business directly from the insured, and then the retailer will approach Gremesco.  She stated that Gremesco is "actually a go between an insured and an insurance company."  (Id. at 6:18–25.)  Spezzano also explained that Halland could not communicate directly with Markel to purchase an insurance policy, but was required to utilize a wholesale broker such as Gremesco to obtain a policy quote and eventually purchase coverage.

Also presented to the Court is the deposition testimony of Patrick Erickson, who was the Halland representative who represented B&A with regard to the Markel insurance policy. According to Erickson, he "put together a submission which was submitted to Gremesco. Gremesco submitted it on to Markel.  Markel came up with promulgation rates.  Gremesco then forwarded the promulgation with the rate indication from Markel to [him].  [He] discussed it with [his] insured, turned around and sent Gremesco an e-mail to bind coverage."  (Margolies Aff., Ex. 14, at 18:20–19:9.)  Erickson confirmed that he never dealt directly with Markel because, to the best of his knowledge, it did not have relationships directly with retail brokers. He stated that he went to Gremesco because it was one of a group of wholesalers that he utilized to access the surplus lines marketplace or wholesale marketplace.

The Policy was bound by Markel and effective on October 13, 2008.  This was the date insurance coverage began.  The binder was then released by Markel to Gremesco on October 22, 2008.  A binder is a temporary or interim policy until a formal policy is issued.  The parties do not dispute that coverage was considered to be in effect at that time, regardless of the fact that a copy of the Policy had not yet been delivered to Gremesco.  Unfortunately, it does not appear to

4

the Court that the Policy being effectuated resolves the relevant question of when the Policy was "delivered".

On December 1, 2008, Markel transmitted a copy of the Policy to Gremesco via e-mail. (See Calascibetta Aff. at ¶ 10, Ex. 3.)  Specifically, Spezzano testified that she forwarded a copy of the Policy to Halland on December 1, 2008.  She explained that while she did not recall sending this Policy to Halland, she was confident of this transmittal because she recorded an entry on Gremesco's internal computer system.  According to Markel, this was its standard practice for transmitting copies of polices to wholesale brokers, as opposed to sending the policy directly to the retail broker or to the insured.  (Spezzano Dep., at 42:1–12.)  Spezzano testified that it is the wholesale broker's responsibility to forward a copy of the policy to the retail broker.

However, Halland denies receipt of the email and/or a copy of the Policy that was purportedly attached to it.  Specifically, Erickson testified that the Policy was not delivered to Halland on that date, but rather was sent on February 18, 2009 after many repeated requests. Erickson acknowledged that Spezzano may have attempted to send the Policy on December 1, 2008, but that he never received this message.  According to Erickson, "[e]ither it was never sent or it was too large to be accepted by my computer system."  (Erickson Dep., at 13:11.)

Therefore, both sides acknowledge that there is a factual dispute concerning the delivery of the policy from Gremesco to Halland.  The Court will now assess the legal effect of this factual dispute.

## II. DISCUSSION

### A. Legal Standard on a Motion for Summary Judgment

It is well-settled that summary judgment under the provisions of Fed. R. Civ. P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is

"material" within the meaning of Fed. R. Civ. P. 56 when its resolution "might affect the

outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  An issue is "genuine" when "the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." Id.

In determining whether an issue is genuine, "[t]he inferences to be drawn from the

underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the

light most favorable to the party opposing the motion." Cronin v. Aetna Life Ins. Co., 46 F.3d

196, 202 (2d Cir. 1995) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8

L.Ed.2d 176 (1962) (per curiam), and Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d

Cir. 1989)).  Once the moving party has met its burden, "the nonmoving party must come

forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)

(quoting Fed. R. Civ. P. 56(e)).  However, the nonmoving party cannot survive summary

judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving

party. Matsushita, 475 U.S. at 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538.  Summary judgment is

appropriate when the moving party can show that "little or no evidence may be found in support

of the nonmoving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223–24

(2d Cir. 1994) (citations omitted).

## B. The Applicability of New York Insurance Law § 3429(a)(5)

As noted above, the primary dispute in this case turns on the applicability of New York's

new rule requiring insurers to show prejudice as a prerequisite to disclaiming liability based on

an untimely notice of claim. That rule is codified at N.Y. Ins. L. § 3420(a), which provides in

pertinent part:

> No policy or contract insuring against liability for injury to . . . or destruction
> of[] property shall be issued or delivered in this state, unless it contains in
> substance the following provisions or provisions that are equally or more
> favorable to the insured . . . :
>
>> (5) A provision that failure to give any notice required to be given by
>> such policy within the time prescribed therein shall not invalidate any
>> claim made by the insured . . . unless the failure to provide timely notice
>> has prejudiced the insurer . . . .

Significantly, this new rule applies *only* to insurance policies that were "issued or delivered" on

or after January 17, 2009. See An Act to Amend the Civil Practice Law and Rules and the

Insurance Law, in Relation to Liability Insurance Policies § 8, 2008 N.Y. Sess. Laws 388

(McKinney) ("This act shall take effect on the one hundred eightieth day after it shall have

become a law, and shall apply to policies issued or delivered in this state on or after such date

and to any action maintained under such a policy . . . ."); see also Rockland Exposition, Inc. v.

Great Am. Assur. Co., 746 F. Supp. 2d 528, 533 n.6 (S.D.N.Y. 2010).

As the prejudice rule was declared to apply to "policies issued *or* delivered" after January

17, 2009, see 2008 N.Y. Sess. Laws 388 (emphasis added), B&A contends that the new rule

applies to this policy because, although it was issued before January 17, 2009, the policy was

delivered after that date.

Markel previously asserted before this Court that the issuance of the insurance policy in

October 2008 was alone sufficient to avoid application of the prejudice rule. However, the Court

found that this argument misread the relevant rule concerning applicability of the revised Section

3420(a). Specifically, the Court explained that based on the state legislature's guidance and the

language of Section 3420(a), the prejudice rule applies to policies that were *either* issued *or*

delivered after January 17, 2009. As the Court stated in its previous decision, "[a] policy need

not be *both* issued *and* delivered after January 17, 2009 for the new rule to apply." Thus, the rule

provides that an insurance contract that is issued *before* January 17, 2009 but delivered *after* that

date will be governed by the amended Section 3420(a).

In light of this ruling, Markel now asserts in the instant motion that it did deliver the

insurance contract to the plaintiff prior to January 17, 2009. The parties do not appear to dispute

that the Policy was issued prior to this date and instead concentrate on the date of delivery. The

Court will now determine whether the Policy was "delivered" prior to January 17, 2009.

### C. As to Whether Actual Physical Delivery is Needed

The initial inquiry posed by the present motion is whether actual physical delivery of the

Policy to B&A or its undisputed agent, Halland, would be necessary in order to effectuate the

requisite "delivery." If actual delivery is required, then the Defendant's motion for summary

judgment necessarily fails, because both parties acknowledge that there are disputed facts as to

the precise timing of when the Policy was sent from Gremesco to Halland, and consequently to

B&A. Thus, if actual delivery is required, this case could not be resolved on a motion for

summary judgment. If, however, actual delivery to the insured or its agent is not required, then

the Defendant's motion remains viable.

Contrary to the Plaintiff's reasoning—that delivery means only physical receipt by

Halland of the policy—it is clear under New York law that neither physical delivery nor actual

possession by the insured is essential to the completion of an insurance contract. See Benatovich

v. Propis Agency, Inc., 224 A.D.2d 998, 637 N.Y.S.2d 551 (4th Dep't 1996); Maurice v. Allstate

Ins. Co., 173 A.D.2d 793, 570 N.Y.S.2d 654 (2d Dep't 1991). The only circumstance under

which the contract will not become effective until the policy is actually delivered to or received

by the applicant is when there is an express agreement to that effect—either by stipulation in the

application or in the policy.  Goldman v. Metropolitan Life Ins. Co., 13 A.D.3d 289, 788

N.Y.S.2d 25 (1st Dep't 2004), order aff'd on other grounds, 5 N.Y.3d 561, 807 N.Y.S.2d 583,

841 N.E.2d 742 (2005).

Therefore, in New York, compliance with the condition of delivery of an insurance

policy calls for a legal delivery, but not in all cases for an actual or manual delivery.  Ruiz v.

State Wide Insulation and Const. Corp., 269 A.D.2d 518, 703 N.Y.S.2d 257 (2d Dep't 2000)

(finding that the declarations page and accompanying endorsements were made part of a general

commercial liability policy and were incorporated by reference into the policy regardless of

whether the insured received actual delivery).  "A constructive delivery suffices in lieu of a

delivery of the instrument into the literal and physical possession of the applicant in the absence

of an explicit provision of the contract making its effectiveness dependent upon an actual

delivery, provided no condition is attached thereto."  68A N.Y. Jur. 2d Insurance § 759.  See

Rhubarb Fashions, Ltd. v. Liberty Mut. Ins. Co., 189 A.D.2d 588, 592 N.Y.S.2d 44 (1st Dep't

1993).

Here, there does not appear to be any provision in the contract that would require

physical delivery of the Policy.  Thus, the Court rejects the theory that the Policy was required to

be physically in the hands of B&A in order to consider the Policy "delivered" under N.Y. Ins. L.

§ 3420(a).  Accordingly, the Court will now assess when legal constructive delivery was

effectuated, which would be sufficient under New York law.

**D. As to Whether the Policy is Considered "Delivered" at the Time the Binder is Issued**

In this regard, the Defendant argues that constructive delivery was effectuated here on

October 22, 2008, which is the date that the binder was issued.  Since that date is prior to January

17, 2009, the Defendant is correct to point that it would be proper to grant summary judgment if

9

the Policy is considered to already have been delivered at that time, because the no prejudice standard would govern. However, if that milestone is not sufficient for purposes of legal delivery under N.Y. Ins. L. § 3420(a), then the Defendant is not entitled to summary judgment and the Court will proceed with its analysis.

Here, the Court finds that the Policy is not considered to be "delivered" at the time the binder is issued. This is because the binder itself is not equivalent to the issuance of the actual policy, let alone the delivery of the Policy. As stated by the Second Circuit, "because 'an insurance binder is a temporary or interim policy until a formal policy is issued,' its starting date cannot be the starting date of the policy." R.D. Mgmt. Corp. v. Ace Fire Underwriters Ins. Co., 7 Fed. App'x 67, 70 (2d Cir. 2001) (quoting Springer v. Allstate Life Isn. Co., 94 N.Y.2d 645, 710 N.Y.S. 2d 298, 300, 731 N.E.2d 1106 (2000)). On this issue, the New York Court of Appeals has found that "[u]nder the clear and unambiguous terms of the binder, coverage ceased when [the insurer] agreed to issue the policy. Coverage was then provided by the policy as of its start date." Springer, 94 N.Y.2d at 650, 710 N.Y.S.2d at 300, 731 N.E.2d 1106.

For this reason, the Court finds the Defendant's argument that the issuance of the binder is equivalent to the delivery of the Policy to be without merit.

## E. As to Whether the Policy is Considered "Delivered" When it was Sent to the Wholesale Broker

The Court has found that physical delivery of the Policy is not required in this particular case, but the issuance of the binder is not sufficient to constitute legal "delivery" of the Policy under the Insurance Law. Therefore, the Defendant's only remaining viable position is that the Policy was "delivered" when it was sent from Markel to the wholesale broker, Gremesco, prior to January 17, 2009. If so, then the Defendant would succeed on its motion for summary judgment because, as a matter of law, this undisputed fact would effectuate delivery prior to the

relevant date of §3420(a). On the other hand, if there is either a question of fact as to whether this action constitutes legal delivery or if it can never constitute legal delivery, then the Defendant's motion necessarily fails.

The Defendant argues that the Policy should be considered "delivered" when it was sent to Gremesco. The sum of the Defendant's arguments is that Gremesco is not Markel's agent, but rather just a wholesale broker and/or conduit, so that it is actually more properly considered to be B&A's agent. Unfortunately, the Plaintiff does not directly address these contentions in its opposition and instead focuses on the factual dispute as to when Halland actually received the Policy. As set forth above, all parties agree, as does this Court, that there is a straightforward factual dispute as to when the Policy was sent to Halland. What is relevant for the purposes of the present motion is whether the preceding step—namely, the delivery to Gremesco—is sufficient to constitute delivery.

To expand upon this point, there is no question that Halland was B&A's retail broker and would be B&A's agent. Thus, if Halland were to receive the policy, undoubtedly it would be considered constructively delivered under New York law. However, there is a clear factual dispute acknowledged by both parties as to when Halland received the policy. The record demonstrates that Lisa Spezzano from Gremesco—Markel's wholesale broker—believes that she emailed the policy to Pat Erickson at Halland on December 12, 2008. This is based upon the fact that she routinely kept notes of these types of communications and that it was indicated in her records that such a communication was sent. However, Pat Erickson from Halland testified that he did not actually receive the policy until February 18, 2009 and that he never received Spezzano's email, possibly because of technological barriers to receiving email attachments that were oversized. Therefore, if delivery to Halland is the only step that would constitute

11

constructive delivery in New York, the Defendants' summary judgment motion would

necessarily be denied.

Therefore, the pertinent issue is Markel's delivery to Gremesco. It is not disputed that

the Defendant delivered the complete policy to Gremesco. The question for the Court is whether

there exists a genuine issue of material fact as to whether Gremesco was acting as the Plaintiff's

legal agent for purposes of delivery of the policy. If so, the Court would be precluded from

granting the Defendant's motion for summary judgment on that basis. If not—i.e., the evidence

shows Gremesco indisputably to have been acting as B&A's agent as a matter of law—then

delivery to Gremesco would constitute delivery of the Policy to the Plaintiff, resolving the

pertinent issue in the Defendant's favor and requiring dismissal of the action.

Therefore, it is necessary to resolve the role of the wholesale broker Gremesco in the

context of this particular transaction.

Courts in New York State have traditionally held that insurance brokers are deemed to be

agents of the insured and not the insurer. See Highlands Ins. Co. v. PRG Brokerage, Inc., No. 01

Civ. 2272, 2004 WL 35439, at *5 (S.D.N.Y. Jan. 6, 2004); Evvtex Co., Inc. v. Hartley Cooper

Assoc. Ltd., 911 F. Supp. 732 (S.D.N.Y. 1996) ("[t]he courts in New York have long held that

insurance brokers act as agents on behalf of an insured and not the insurer."). Thus, when

considered in light of this general rule, Gremsco, as a wholesale broker, would traditionally be

deemed an agent of B&A and not Markel. However, there are serious considerations that come

into play in the instant case that the Court must consider before applying this general rule.

First, the label of "broker" here with regard to Gremesco is not conclusive with regard to

this presumption. An "insurance broker" is "any person, firm, association or corporation who or

which for any compensation, commission or other thing of value acts or aids in any manner in

12

soliciting, negotiating or selling, any insurance or annuity contract or in placing risks or taking

out insurance, on behalf of an insured other than himself, herself or itself or on behalf of any

licensed insurance broker. . . ." N.Y. Ins. Law § 2101(c) (McKinney 2012). On the other hand,

an "insurance agent" is "any authorized or acknowledged agent of an insurer, fraternal benefit

society or health maintenance organization . . . , and any sub-agent or other representative of

such an agent, who acts as such in the solicitation of, negotiation for, or sale of, an insurance,

health maintenance organization or annuity contract, other than as a licensed insurance broker . .

. ." N.Y. Ins. Law § 2101(a) (McKinney 2012). In short, a "broker" is the representative of the

insured, and an "agent" is a representative of the insurer. MacLaren Europe Ltd., 2012 WL

5426686, at *1; see Bohlinger v. Zanger, 306 N.Y. 228, 117 N.E.2d 338, 339 (1954).

The Defendant makes much of the fact that Gremesco's title is "wholesale broker", and

thus is not an agent. The Defendant appears to be arguing that Gremesco was an insurance

broker as opposed to an insurance agent; that an insurance broker is necessarily the legal agent of

the insured; and thus Gremesco was B&A's legal agent.

The terms "broker" and "agent" within the insurance context have been a source of

confusion. "While agency principles are bound up with each type of relationship, the law of

agency and the duties of an insurance agent are not necessarily identical." McLaren, 2012 WL

5426686, at *1. "Agent" is commonly used to refer to an insurance agent, or, in a more general

sense, to an insurance broker as well. Alternatively, "agent" is a term of art which denotes a

legal status conferred by the law of agency. What matters here is whether Gremesco was the

legal agent of B&A, not agent in the occupational sense. Put another way, "[w]hether

[Gremesco] is defined as an insurance broker or an insurance agent is not dispositive of the issue

of [Gremesco's] legal agency for purposes of delivery of the policy." Varda, Inc. v. Insurance

Co. of N. Am., No. 85 Civ. 8133, at * 3 (S.D.N.Y. May 26, 1992).  "The question of whether a

broker represents the insurer or the insured depends upon the particular circumstances of each

case, although the general rule is that an insurance broker is regarded as agent for the insured."

Riedman Agency, Inc. v. Meaott Constr. Corp., 90 A.D.2d 963, 964, 456 N.Y.S.2d 553, 555

(1982).

Second, even if Gremesco is considered a legal "broker", the presumption does not

automatically apply without exception.  For example, an insurance broker can be held to be the

legal agent of both the insurer and the insured, in certain circumstances, if there is "evidence of

some act on the part of the insurance company or facts from which the authority to represent it

may be inferred."  Globe & Rutgers Fire Ins. Co. v. Lesher Whitman & Co. Inc., 126 Misc. 874,

215 N.Y.S. 225, 227 (1926) (the broker was found to be the legal agent of the insurer, despite a

clause in the policy making one who procured the policy for insured the insured's agent).

Beyond this idea of dual agency—where a "broker" can be the legal agent of both the insured

and insurer—there are also special circumstances in which a legal broker can be a legal agent

with regard to certain actions.  For example, "[w]hile an insurance broker may act as the

insured's agent in procuring the policy, the broker may become the agent of the insurer as to

other aspects of the relationship once the policy is issued, such as for the purpose of delivering

the policy and collecting the premiums."  43 Am. Jur. 2d Insurance § 129.

In the converse, even if Gremesco is considered to be a legal agent of Markel, it, by

virtue of the circumstances, can still be an agent of the insured as well.  See Rose Inn Corp. v.

National Union Fire Ins. Co., 229 A.D. 349, 243 N.Y.S. 249, aff'd 258 N.Y. 51, 179 N.E. 256

(1932) (explaining that an insurance agency could not be agent for both the insured and insurer if

14

there was a conflict of interest, but could if there was no conflict of interest and no incompatibility).

As one Court has aptly observed, "[d]etermining the scope of an insurance agent/broker's authority is no more straightforward when the inquiry focuses solely on delivery of the policy." Varda, 1992 WL 122759, at *4.

Thus, "[t]he assumption that a broker is the agent of the insured 'can be overcome, but only by a showing of exceptional circumstances indicating that, in the particular facts of the case, . . . a broker's arrangement with the insurer is such that this standard relationship should not be assumed.'" Gold Star, Inc. v. Lloyds of London Underwriters, 113 F.3d 1229 (Table), 1997 WL 260045, at *2 (2d Cir. May 19, 1997) (quoting Evvtex Co. v. Hartley Cooper Assocs. Ltd., No. 92–CV–9417, 1995 WL 144153, at *3 (S.D.N.Y. Mar. 31, 1995)).  After closely examining the proof submitted by both parties, "[n]othing in the evidentiary record indicates that such exceptional circumstances existed in the instant case.  To the contrary, the relationship between [Gremesco] and [Markel] was, in all material respects, ordinary." Jefferson Ins. Co. of New York v. Cassella, No. 00 Civ. 5898, 2003 WL 23411876, at *3 (E.D.N.Y. Oct. 21. 2003).

Indeed, the affidavit submitted by the Defendant from Fern Calascibetta, Manager for Markel's Regional Operations, explains that she does not consider Gremesco to be an agent and more importantly, that Gremesco also did not have the authority to bind coverage or issue an insurance policy on behalf of Markel.  Likewise, Gremesco did not have the authority to calculate or charge premiums on behalf of Markel.  (Calascibetta Aff., at ¶¶ 9–10.)

Further, the deposition testimony of Lisa Spezzano describes a typical business relationship, in which Gremesco was "appointed" by Markel to do business with them.  As evident in Spezzano's testimony, this relationship was different than that of Gremesco's

15

activities with other companies, where Gremesco could be said to be an extension of that

insurance company by having binding authority for that company as its underwriter.  Additional

characteristics of this relationship that demonstrate a non-agency relationship are that Markel is

just one of the more than one hundred insurance companies that Gremesco works for; that

Gremesco will consider various insurance companies when dealing with a retail broker; and that

Gremesco markets its services to retail brokers.  In this regard, Patrick Erickson of Halland

testified that he goes to Gremesco to purchase a policy because "Gremesco is one of a group of

wholesalers that [he] utilize[s] to access the surplus lines marketplace or the wholesale

marketplace."  (Erickson Dep. at 22:2–5.)  He also stated that "Gremesco was acting to procure

insurance through [him] for B&A."  (Id. at 26:5–7.)

In addition, the main piece of evidence relied upon in an analogous case in denying the

insurance company's motion for summary judgment, Varda, Inc. v. Insurance Company of North

America, No. 85 Civ. 8133, 1992 WL 122759 (S.D.N.Y. May 26, 1992), was that the broker's

signature was on the face of the policy as the "authorized agent" of the insurer.  Here, the Policy

does not contain the signature of any individual at Gremesco as the authorized agent of Markel.

Thus, while that case ultimately found that there was a genuine issue of material fact as to the

agency status of the broker, Varda is distinguishable on this ground.

Overall, the Plaintiff has failed to dispute any of the facts set forth by the Defendant that

support the application of the general rule that Gremesco was the agent of B&A.  More

importantly, the Plaintiff has also failed to point to any countervailing evidence.

The Court now puts aside Gremesco's occupational title which is not dispositive, because

what matters here is whether Gremesco was the *legal* agent of B&A.  The Court finds that the

record does not contain any special circumstances that would convert Gremesco into an agent for

Markel.  Therefore, the Court further finds that there is no genuine issue of material fact as to whether the general rule applies, namely that Gremesco is considered to be the legal agent of B&A.  See 3 Couch on Insurance § 45.5 (revised 3d ed. 2011) ("[Absent] the existence of special circumstances ... a broker may not be converted into an agent for the insurer without some action on the part of the insurer or the existence of some facts that indicate that the broker has the authority to represent the insurer.").

In sum, "an individual's legal agency status in an insurance transaction, including delivery of the policy, is not determined by occupational classification, *i.e.* insurance broker or insurance agent, or any other formalistic test, but rather by the nature and weight of the surrounding circumstances."  Varda, 1992 WL 122759, at *4; see also Couch on Insurance 2d § 25:94 at 447–48 ("The question whether a broker is the agent for the insured or the insurer is ordinarily one of fact for determination by the jury, particularly when there is conflicting evidence.").

Accordingly, the Court finds that the evidence reveals that Gremesco is an agent of B&A with regard to the "delivery" of the Policy.  The "delivery" took place when Gremesco received the Policy for Markel on December 1, 2008.  This was prior to January 17, 2009, when the requirement to show prejudice was enacted.  Therefore, the untimely notice by B&A precludes recovery under the Policy.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the Defendant's motion for summary judgment dismissing the complaint is granted; and it is further

**ORDERED** that the Clerk of the Court is respectfully directed to mark this case as

closed.

**SO ORDERED.**

Dated:  Central Islip, New York
April 18, 2013

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge

18